UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JOSE ORIBEL PONCE-ULLOA<br><br>    Defendant. | Case No. 1:17-cr-00150-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Jose O. Ponce-Ulloa's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. 104) and Motion for a Court Appointed Public Defender (Dkt. 100). The Government has filed an opposition to Ponce-Ulloa's Motions. Dkt. 106. Ponce-Ulloa has filed a reply brief. Dkt. 108.[1] The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES

---

[1] Ponce-Ulloa also filed a Motion to Supplement (Dkt. 102) asking the Court to consider additional information in support of his request for compassionate release. This Motion is GRANTED, and the Court will consider the additional materials filed at Dkt. 102-1 as part of its decision today.

MEMORANDUM DECISION AND ORDER - 1

both Motions.

## II. BACKGROUND

On May 18, 2016, Ponce-Ulloa sold methamphetamine to an undercover police officer. Dkt. 86, at 98. Ponce-Ulloa offered the officer a pound of the substance that day, but the officer could not pay for that much methamphetamine at the time and instead bought approximately 13.9 grams. *Id.* at 94. Ponce-Ulloa then sold methamphetamine to the same police officer three more times, on May 26, 2016, June 16, 2016, and July 6, 2016. *Id.* at 98. On each of those subsequent interactions, Ponce-Ulloa sold the officer 50 grams or more of methamphetamine. *Id.* at 98–109. Each time, Ponce-Ulloa took the methamphetamine from a pound of the substance that he had stashed around his home. *Id.* at 86–87. Additionally, Ponce-Ulloa told a different undercover police officer that he was able to get methamphetamine directly from Sinaloa, Mexico. Dkt. 87, at 60. This indicated that Ponce-Ulloa was working with a Drug Trafficking Organization due to the large amount of methamphetamine he was able to transport and his connections with drug traffickers in Mexico.

On November 16, 2018, Ponce-Ulloa was convicted by a jury of one count of Distribution of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and three counts of Distribution of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). Dkt. 67. Judge Edward J. Lodge sentenced Ponce-Ulloa to 240 months of incarceration. Dkt. 77, at 2.[2] Ponce-Ulloa's projected release date is May 23, 2034, indicating that he has

---

[2] Due to Judge Lodge taking inactive status, this case was reassigned to the undersigned. Dkt. 103.

served roughly 96 months. Dkt. 106, at 3. Therefore, he has served approximately 40% of his sentence.

On October 12, 2021, Ponce-Ulloa filed the instant Motion for Compassionate Release. Dkt. 104. Ponce-Ulloa claims he exhausted his administrative remedies and provides the Bureau of Prison's ("BOP") denial of his compassionate release as evidence. *Id.* at 27. Ponce-Ulloa bases the instant request on the risk of being exposed to COVID-19 generally (Dkt. 104, at 1) in conjunction with some medical abnormalities he lives with, including early symptoms of colon cancer, high levels of glucose, liver enzymes, and triglycerides, and low hemoglobin (Dkt. 104, at 14). Ponce-Ulloa also claims that he is not getting adequate care due to language barriers. *Id.* at 14. He has provided the clinical reports that support his assertions of an abnormal blood test and other medical abnormalities. *Id.* at 39–41. He has no definite diagnosis and has provided a document showing he denied further testing regarding the early symptoms of cancer. *Id.* Additionally, Ponce-Ulloa has received both shots of the Moderna vaccine against COVID-19 and subsequently contracted and recovered from COVID-19. *Id.* at 32–35.

Ponce-Ulloa is currently incarcerated at Federal Correctional Institution La Tuna ("FCI La Tuna") in Texas.

## III. LEGAL STANDARD

Ponce-Ulloa seeks compassionate release under the First Step Act ("FSA"), newly amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under

certain circumstances.[3] In order to grant compassionate release, a district court must, as a

threshold matter, determine whether a defendant has exhausted his or her administrative

remedies. *Id.* Next, a district court may grant compassionate release only if "extraordinary

and compelling reasons warrant such a reduction," and the reduction is "consistent with

applicable policy statements" issued by the U.S. Sentencing Commission.[4] *Id.* If the latter

criteria are met, the district court must then consider the sentencing factors set forth in 18

U.S.C. § 3553(a) to the extent they are applicable. *Id.*; *United States v. Rodriguez*, 424 F.

Supp. 3d 674, 680 (N.D. Cal. 2019).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the

BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to

appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30

days from the receipt of such a request by the warden of the defendant's facility, whichever

---

[3] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

[4] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

MEMORANDUM DECISION AND ORDER - 4

is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Ponce-Ulloa claims he exhausted his notice requirement to the BOP, and has provided evidence of such. On September 30, 2021, the Warden denied Ponce-Ulloa's request for compassionate release. Dkt. 104, at pg. 27. However, Ponce-Ulloa filed the instant Motion on October 12, 2021, only 13 days after the receipt of the Warden's decision. *Id.* Thus, it appears that Ponce-Ulloa failed to exhaust his administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A) in that he did not wait the requisite 30 days before filing in this forum.

### B. Extraordinary and Compelling Reasons

Despite Ponce-Ulloa's procedural failure to exhaust remedies, the Court will nevertheless, consider whether "extraordinary and compelling reasons" warrant a permanent reduction in his sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Ponce-Ulloa bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in

combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). This assumption is no longer consistent with the law under the FSA, which allows defendants to seek relief directly from the court. As such, the question of whether district courts are strictly bound by the Sentencing Commission's statements in U.S.S.G. § 1B1.13 when considering prisoners' motions for compassionate release—as they are when considering motions by the Director of the BOP—was momentarily left open. The Ninth Circuit has recently answered that question in the negative. *See United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021) (holding that "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant."). Therefore, the guidelines in U.S.S.G. § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.*

Nonetheless, Ponce-Ulloa's motion suggests that one of the specific scenarios set out in U.S.S.G. § 1B1.13 applies in this case. He argues that the threat of contracting COVID-19, in conjunction with early symptoms of colon cancer, and abnormal blood test results, constitutes an extraordinary and compelling circumstance necessitating compassionate release under the "medical condition" scenario in subdivision (A) of

U.S.S.G. 1B1.13, Application Note 1.[5] *See* Dkt. 104. Ponce-Ulloa's BOP medical records indicate that he has elevated glucose levels, elevated levels of a liver enzyme associated with liver disease, elevated triglyceride levels, and low levels of hemoglobin. Dkt. 104, at 14–15.

As an initial matter, the Court notes that Ponce-Ulloa's medical conditions likely do not place him at a higher risk of contracting a severe form of COVID-19. The CDC lists various underlying health conditions that can place individuals at an increased risk of severe illness from COVID-19, but Ponce-Ulloa has not named a single diagnosed health condition that falls under that list.[6] Not even his age—58—would be considered a factor

---

[5] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:

(A)   Medical Condition of the Defendant.—

(i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)   The defendant is—

(I)   suffering from a serious physical or medical condition,

(II)   suffering from a serious functional or cognitive impairment, or

(III)   experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

[6] *CDC Updates, People with Certain Medical Conditions,* (Updated May 2, 2022) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

likely to contribute to an increased likelihood of contracting a severe form of COVID-19.

Additionally, the Government argues, and the Court agrees, that Ponce-Ulloa's vaccination

status and recovery from COVID-19 weighs heavily against a finding of extraordinary and

compelling circumstances.

Ponce-Ulloa first points to the COVID-19 pandemic (in general) as a reason for his

release. *See generally,* Dkt. 104. Concern for the possibility of exposure to COVID-19 on

its own, however, does not meet the extraordinary and compelling criteria. *See United*

*States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Even considering his potential health conditions, Ponce-Ulloa's risk of serious

illness or death from COVID-19 is relatively low because of the efforts of the BOP and its

modified operations plan.[7] Indeed, it was because of the BOP's operation plan that Ponce-

Ulloa was fully vaccinated as of June 25, 2021, against COVID-19. Dkt. 104, at 35. Ponce-

Ulloa received both doses of the COVID-19 Moderna vaccine. *Id.*; *United States v. Kim*,

2021 U.S. Dist. LEXIS 86830, at *6–7 (D. Haw. May 6, 2021) (denying the defendant's

motion because he was fully vaccinated, and there were no active COVID-19 cases at the

facility where he was located); *United States v. Stewart*, 2021 U.S. Dist. LEXIS 99588, at

*7 n.3 (D.N.J. May 25, 2021) (denying defendant's compassionate release motion because

the defendant had begun the vaccination process). The Court has also reviewed Ponce-

Ulloa's BOP medical records and it appears that he has denied further testing to determine

---

[7] *Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited May 12, 2022).

MEMORANDUM DECISION AND ORDER - 8

his more serious health concerns. Dkt. 104, at 41. Thus, the Court cannot definitively know if Ponce-Ulloa's medical conditions would place him at greater risk.[8]

Additionally, there is no evidence to suggest that Ponce-Ulloa would be at lower risk to contract COVID-19 if he were released. Multiple courts have denied compassionate release to prisoners, even those with high-risk medical conditions, because many of them would likely be less exposed to the pandemic by remaining at the prison. *See United States v. Singui*, 2020 WL 2523114, at *4 (C.D. Cal. May 12, 2020) (denying compassionate release to inmate with diabetes, high blood pressure, and high cholesterol; observing that "there is little evidence that [the defendant] is presently at greater risk of contracting the virus at MDC than in the general population: MDC has no current reported infections, inmates at MDC are housed in separate units, and the staff at MDC has undertaken a variety of interventions [] to prevent the virus from reaching and spreading within the prison"); *United States v. Hembry*, 2020 WL 1821930, at *2 (N.D. Cal. Apr. 10, 2020) (denying motion for inmate with diabetes based on COVID-19 risks where, *inter alia*, the incarcerated movant was "housed at a facility with no reported infections"). Indeed, as of May 12, 2022, FCI La Tuna is reporting zero active cases among inmates and five active cases among staff.[9] Ponce-Ulloa has requested release to ICE and eventually to Mexico. Dkt. 104, at 3. As of May 12, 2022, ICE was reporting 416 active cases across all detention centers and 11 active cases in the El Paso, Texas processing centers, the ICE centers nearest

---

[8] Ponce-Ulloa may refile this motion should his medical situation change in the future.
[9] Federal Bureau of Prisons, COVID-19 Information, available at https://www.bop.gov/coronavirus/ (last accessed May 12, 2022).

to FCI La Tuna.[10] Most counties in the United States (and Mexico) are reporting higher caseloads within the relevant population. Thus, there is no guarantee that Ponce-Ulloa would be at less risk out in the community.

The Government also argues that the 18 U.S.C. § 3553(a) factors weigh against Ponce-Ulloa's release.[11] Dkt. 106, at 9. The Court agrees.

Ponce-Ulloa has failed to demonstrate how release, after having served less than half of his sentence for a serious drug offense, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. As outlined by the Presentence Investigation Report, Ponce-Ulloa transported pound quantities of drugs from Mexico to the United States. Dkt. 72, at 5. He had been doing so for at least 3 years by the time of his arrest. *Id.* at 72. Ponce-Ulloa has not stated that he has any plans that will prevent him from participating in the drug trade again. *See generally* Dkt. 104. And with

---

[10] U.S. Immigration and Customs Enforcement, ICE Guidance on COVID-19, available at https://www.ice.gov/coronavirus (last accessed May 12, 2022).

[11] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

    (2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

MEMORANDUM DECISION AND ORDER - 10

the concerning medical tests that Ponce-Ulloa has provided along with his own statements regarding his family's poverty in Mexico, he is likely to receive better care at FCI La Tuna. Dkt. 72, at 10. The Court also agrees with the Government's argument that the public is currently best protected by Ponce-Ulloa's continued incarceration. As such, all four factors set forth in U.S.C. § 3553(a)(2) weigh against releasing Ponce-Ulloa early.

In sum, the Court finds that Ponce-Ulloa has not exhausted his administrative remedies. This alone is fatal to his motion. What's more, he has failed to substantively demonstrate an "extraordinary and compelling reason" for his release and has failed to show that such a reduction in his sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Weighing all relevant factors, the Court cannot depart from its prior sentence and release Ponce-Ulloa at this time. Accordingly, the Court must DENY Ponce-Ulloa's motion.

Finally, with respect to Ponce-Ulloa's request for appointment of counsel (Dkt. 100), there is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."). Instead, the decision whether to appoint counsel in post-conviction proceedings (including requests for compassionate release) rests with the discretion of the district court. *United States v. Harrington*, 410 F.3d 598, 600 (9th Cir. 2005). In this case, the Court has reviewed the materials and does not find any circumstances warranting the appointment of Counsel. Accordingly, the Court DENIES Ponce-Ulloa's request to appoint counsel.

## V. ORDER

The Court HEREBY ORDERS:

1. Ponce-Ulloa's Motion for Compassionate Release (Dkt. 104) is DENIED.

2. Ponce-Ulloa's Motion to Appoint Counsel (Dkt. 100) is DENIED.

3. Ponce-Ulloa's Motion to Supplement (Dkt. 102) is GRANTED.

DATED: May 20, 2022

David C. Nye
Chief U.S. District Court Judge