UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSE ORIBEL PONCE-ULLOA,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. 1:22-cv-00425-DCN<br>1:17-cr-00150-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Petitioner Jose Oribel Ponce-Ulloa's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (the "Petition"). Dkt. 1.[1] The Government filed a Response to Ponce-Ulloa's Motion. Dkt. 5. Ponce-Ulloa did not reply. For the reasons set forth below, the Court DENIES the motion.

## II. BACKGROUND

On November 16, 2018, a jury found Ponce-Ulloa guilty on four counts of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1). CR-150, Dkt. 77. The Court found Ponce-Ulloa's guideline range of 262–327 months was appropriate given

---

[1] In this Order, "CR-150" is used when citing to Ponce-Ulloa's criminal case record in 1:17-cr-00150-DCN-1. All other docket citations are to the record in the instant civil case.

MEMORANDUM DECISION AND ORDER-1

his offense level of thirty-eight and a criminal history category of two. CR-150, Dkt. 74, at 7–8. Considering the sentencing guidelines and the factors set forth in 18 U.S.C. § 3553(a), the Court sentenced Ponce-Ulloa to 240 months incarceration and five years of supervised release on January 24, 2019. CR-150, Dkt 77, at 1–3.

On February 1, 2019, Ponce-Ulloa timely appealed the judgment. CR-150, Dkt. 79. The Ninth Circuit heard arguments and dismissed his appeal. CR-150, Dkts. 95, 97. Ponce-Ulloa filed a petition for certiorari from the United States Supreme Court on April 29, 2021, and the Supreme Court denied the petition on June 8, 2021. CR-150, Dkt. 99. Ponce-Ulloa filed a pro se motion for Compassionate Release on October 12, 2021, with a supplemental filing on December 21, 2021. CR-150, Dkts. 104, 102. The Court denied the motion for compassionate release on May 20, 2022. CR-150, Dkt. 109. Ponce-Ulloa filed the instant Petition on October 11, 2022. Dkt. 1. On October 13, 2022, the Court filed a Notice of Filing and Order Setting the Briefing Schedule outlining the timeframes for responses. Dkt. 3. Pursuant to the Order, Ponce-Ulloa had fourteen days following the Government's reply to file a response brief. The Government filed a reply on January 11, 2023. Dkt. 5. The deadline for Ponce-Ulloa's response has now passed, and the matter is ripe for review.

### III. LEGAL STANDARD

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) "that the

sentence is otherwise subject to collateral attack[.]" § 2255(a).

Relief under § 2255 is afforded "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." § 2255(b). Furthermore, "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011).

A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062–63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980); *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

### IV. ANALYSIS

#### A. Timeliness of Petition

The Court first addresses the timeliness argument raised by the Government. To be

timely, a petition attacking a sentence must be filed within one year. 28 U.S.C. § 2255(f). The countdown clock starts upon the latest of four events: "(1) the date on which the judgment of conviction becomes final;" (2) "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such [G]overnmental action;" (3) "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;" or (4) "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." *Id.*

A judgment becomes final when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari . . . ." *Clay v. United States*, 537 U.S. 522, 527 (2003). Ponce-Ulloa's petition for a writ of certiorari was denied by the Supreme Court on June 8, 2021, starting the clock for the statute of limitations. Dkt. 99. Under § 2255, Ponce-Ulloa had until June 7, 2022, to file his Petition. As noted, he filed his Petition on October 11, 2022—over three months *after* the applicable deadline.

Ponce-Ulloa asserts that he was unable to timely file his petition due to lack of access to the prison law library and, as a result, the timeframe should be tolled. Dkt. 1, at 12. This argument fails for several reasons. First, for statutory tolling, an impediment created by government action in violation of law may toll the filing period if it truly prevented the petitioner from filing. 28 U.S.C. § 2255(f)(2). The denial of legal materials *may* be an impediment under the statute. *See Whalem v. Early*, 233 F.3d 1146, 1147 (9th

MEMORANDUM DECISION AND ORDER-4

Cir. 2000);[2] *Estremera v. United States*, 724 F.3d 773, 777 (7th Cir. 2013). Denial of legal materials may also give rise to equitable tolling outside of the statute. *See Holland v. Florida*, 560 U.S. 631, 645-49 (2010) (If a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing," the filing deadline may be equitably tolled). Neither circumstance is applicable here.

Ponce-Ulloa accessed the law library resources while filing his compassionate relief petition in the Fall of 2021 (Dkt. 104) and in his Reply to the Government's Response in April of 2022 (Dkt. 108). It defies logic that he would have access to the library for one filing but lacked meaningful access for another. Therefore, having failed to demonstrate a barrier to filing, a tolling of the timeframe would be inappropriate.

For these reasons, the Court finds Ponce-Ulloa's § 2255 petition was filed more than one year from final judgment and is untimely. Even though the § 2255 petition is barred for untimeliness, the Court will address the merits of the petition.

### B. Ineffective Assistance of Counsel

In his Petition Ponce-Ulloa claims ineffective assistance of counsel justifies revisiting his sentence. As the United States Supreme Court has noted, "[a] court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional

---

[2] In this case, the Ninth Circuit addressed 28 U.S.C. § 2244(d)(1)(C), which applies to habeas petitions from state judgments. Given the similarity among statutes, this case is appropriately considered in the context of 28 U.S.C. § 2255 provisions.

MEMORANDUM DECISION AND ORDER-5

assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).[3] Therefore, Ponce-Ulloa must satisfy both prongs of "the two-part *Strickland v. Washington* test." *Hill v. Lockhart*, 474 U.S. 52, 56–58 (1985) (citing *Strickland*, 466 U.S. at 687–90); *see also Lee v. United States*, 137 S. Ct. 1958, 1964–67 (2017). To establish ineffective assistance under that test here, Ponce-Ulloa must show: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hill*, 474 U.S. at 56–58 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)); *see also United States v. Silveira*, 997 F.3d 911 (9th Cir. 2021) (citing and reaffirming *McMann*.)[4] Even if counsel acted professionally unreasonable, prejudice to the petitioner is a requirement to set aside the judgement. *Hill*, 474 U.S. at 57.

In this case, Ponce-Ulloa alleges eight instances of ineffective assistance of counsel: his counsel's (1) failure to submit a special verdict form addressing various forms of methamphetamine, (2) failure to raise and litigate the actual methamphetamine as opposed to mixture because no lab report was submitted showing purity levels that would trigger a higher sentence, (3) failure to file timely written objections to issues one and two, (4)

---

[3] In applying that presumption, a court must make an effort "to eliminate the distorting effects of hindsight" and instead "to reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

[4] To satisfy the *Strickland* prongs, Ponce-Ulloa must identify specific deficient acts or omissions of defense counsel. *Strickland*, 466 U.S. at 690. Also, when a defendant's Section 2255 claim "is conclusory or inherently incredible, a district court has the discretion to dismiss the petition without a hearing." *United States v. Howard*, 381 F.3d 873, 879 (9th Cir. 2004).

MEMORANDUM DECISION AND ORDER-6

failure to raise and litigate the issue of purity during the sentencing hearing proceeding, (5) failure to "inform the Court to take Judicial Notice" of the weight the sentencing factors for mixed methamphetamine under the drug table base offense level, (6) failure to raise and litigate that the Government initiated the indictment and sought the penalty, (7) failure to effectively counter the Government and Pre-Sentence Report contentions that aggravated enhancements should be added, and (8) failure resulting in deficient and prejudicial performance denying Petitioner due process at the trial and sentencing stage resulting in an unreasonable sentence. Dkt. 1. The Court will consider each allegation in turn.

1. *Special Verdict Form Addressing Purity*

Ponce-Ulloa asserts that his counsel failed to submit a special jury verdict form that would enable the jury to determine if the methamphetamine in question was actual methamphetamine or a mixture.

A special jury verdict form was submitted to the jury in this case and asked a series of questions. Dkt. 5-4. First, the jury had to decide whether Ponce-Ulloa was guilty of distribution of methamphetamine. *Id.* If they found he was, the form then asked the jury to determine the amount distributed: "50 grams or more," "less than 50 grams, but more than 5 grams," and "less than 5 grams." *Id.* The form did not specify mixture or actual, but there is not a requirement to do so.[5] The form follows the language of 21 U.S.C. §

---

[5] The distinction regarding actual vs mixed methamphetamine is often a consideration at sentencing by the Judge. The Court is not aware, however, of any instances when a jury would be asked to decide whether the drugs at issue were mixed or actual and/or what percentage of the drugs were "pure."

MEMORANDUM DECISION AND ORDER-7

841(b)(1)(A)(viii) ("50 grams or more of methamphetamine").

Further, when read in light of the jury instructions on the distribution counts, which asked the jury to exclude from the weight of the drugs "any packaging material" and indicated the Government had to prove beyond a reasonable doubt that "the amount of mixture and substance containing a detectable amount of Methamphetamine equaled or exceed five grams or more of actual methamphetamine" (CR-150, Dkt. 65, at 47–50), it is evident that the plain reference to "methamphetamine" in the special verdict form at issue refers solely to pure or actual methamphetamine. Accordingly, the special verdict form was proper, and the jury considered the issue during deliberations. Because the form was both submitted and utilized, Ponce-Ulloa's counsel did not act below a standard of objective reasonableness.

Moreover, even if the Court were to assume that the special verdict form was defective, the error was harmless in light of the expert's testimony regarding the weight and purity of the methamphetamine in Ponce-Ulloa's possession. Dkt. 5-5. Even accounting for the uncertainty in value due to minor variations on the measuring equipment, a conservative amount established by the expert witness was that Ponce-Ulloa had 12.83 grams, 51.16 grams, 103.54 grams, and 51.75 grams, far exceeding the minimum amounts stated in counts one through four of the superseding indictment. *Id.* Further, the purity was determined to be between 99 and 100 percent. *Id.* Because the amounts in question exceed the statutory minimum, even without a special verdict form, the outcome of the trial would have been the same, rendering any error as harmless.

Finally, Ponce-Ulloa took the stand at trial and admitted to selling the

methamphetamine but claimed he did so under duress. CR-150, Dkt. 88, at 13–56. The key argument the defense presented was duress and not the purity issue, demonstrating that it was not the defense's primary concern during trial, and counsel did not act below the standard of objective reasonableness. Therefore, neither of the *Strickland* prongs have been met demonstrating counsel's ineffective assistance on this claim.

  2. *Lack of Lab Report Establishing Purity*

Ponce-Ulloa next alleges his counsel was deficient based on a failure "to raise and litigate the actual methamphetamine as opposed to mixture. No lab report was ever requested or submit[ted] as evidence to determine the 80% to trigger actual or ICE determination to warrant such an increase in sentence/punishment." Dkt. 1-1, at 10. While not formally submitted into evidence, Ponce-Ulloa's counsel was provided with lab results through the course of discovery and as part of an expert report prior to trial. CR-150, Dkt. 43. Further, his counsel cross-examined expert witness David Sincerbeaux, and specifically asked about the weight and purity determinations based on that expert report. Dkt. 5-5. Counsel further fully litigated the issue on appeal. *United States v. Ponce-Ulloa*, 835 Fed.Appx. 227 (9th Cir. 2020). Therefore, the allegation fails to demonstrate conduct below the objective standard of reasonableness. Further, there is no prejudice. The testimony and lab reports show that the outcome would have remained the same.

Neither of the *Strickland* prongs have been met demonstrating counsel's ineffective assistance on this claim.

MEMORANDUM DECISION AND ORDER-9

3. *Failure to File Timely Written Objections to Point of Error in Claims One and Two*

Ponce-Ulloa asserts his counsel failed to file objections pertaining to the purity concerns and the special jury verdict form as previously outlined above. Dkt. 1-1, at 10. Based off the above analyses, Ponce-Ulloa's counsel did not commit any egregious errors in Claims One and Two, and in fact, did timely object to the purity issue both during trial and on appeal. Dkts. 5-1, 5-2, 5-10. There is no legal or factual basis for this claim.

4. *Failure to Raise Purity Concerns During Sentencing*

Continuing on this wise, Ponce-Ulloa asserts his counsel failed to adequately raise and litigate the issue concerning the purity and determined amounts of the methamphetamine in order to challenge whether the requirements of the superseding indictment had been met during sentencing.

As previously analyzed, counsel timely raised objections and questions regarding the amount of actual methamphetamine during sentencing. CR-150, Dkt. 90. This Court chose to apply the purity guideline. The drug weights were affirmed as properly calculated on appeal. *Ponce-Ulloa*, 835 Fed.Appx. at 227. Relevant conduct pursuant to U.S. Sentencing Guideline § 1B1.3 controls the drug weight guideline sentencing analysis and not the weights in superseding indictment. With the vigorous representation of counsel, Ponce-Ulloa received a sentence below the sentencing guideline range. CR-150, Dkts. 77, 78. Therefore, there is no legal or factual basis for this claim.

5. *Counsel's Failure to Inform Court to Take Judicial Notice*

Ponce-Ulloa argues his counsel failed to ask the Court to take judicial notice that it

MEMORANDUM DECISION AND ORDER-10

should weigh the sentencing factors pursuant to a mixture of methamphetamine under the drug table base offense level. Dkt. 1-1, at 10. Judicial notice is used by a court when it declares a fact presented as evidence as true without a formal presentation of evidence. A court can take judicial notice of indisputable facts. JUDICIAL NOTICE, Black's Law Dictionary (11th ed. 2019).

There was no basis for judicial notice in applying the sentencing factors under 18 U.S.C. § 3553(a). F.R.E. 201 and 1101(d)(3). There was not a fact to be presented or accepted, merely guidelines to follow given the circumstances. Therefore, there is no legal or factual basis for this claim.

6. *Failure to Litigate the Government Initiating the Superseding Indictment*

Ponce-Ulloa contends his counsel was deficient for failing to challenge the Government for seeking and amending the superseding indictment to request penalties under 21 U.S.C. § 841(a)(1)(b)(1)(B) rather than a Class-A Felony.

This claim is confusing because there is clear statutory support for the type of offense at issue under 21 U.S.C. § 841 and the enumerated penalties under that specific statute. A Class-A Felony could potentially enhance the sentence and the categorization is reserved for the worst crimes. Ponce-Ullua's counsel did not fall below an objective standard of reasonableness in his trial strategy. Therefore, there is no legal or factual basis for this claim.

7. *Ineffective Countering of the Government's Arguments*

Ponce-Ulloa asserts his counsel deficiently performed because he did not succeed on challenges to the Pre-Sentence Report. Dkt. 1-1, at 10. While understandably

MEMORANDUM DECISION AND ORDER-11

disappointed in the lack of success, Ponce-Ulloa does not indicate or articulate a constitutional violation that resulted as a result of his attorney losing certain arguments. His counsel did argue against the application of various guideline provisions, both at sentencing and on appeal. There is not a sufficient legal or factual basis for this claim.

8. *The Sum of Counsel's Deficiencies Result in a Denial of Due Process*

Ponce-Ulloa asserts that because his counsel failed to challenge the aforementioned issues successfully that it resulted in an unduly harsh sentence. He states the deficient performance denied him of his Due Process rights at sentencing. This statement is unsupported by the prior analyses and Ponce-Ulloa does not articulate the manner in which his Due Process rights were violated. There is no legal or factual basis for this claim. And, as noted, Ponce-Ulloa was actually sentenced *below* the applicable guideline range.

9. *Conclusion*

The eight claims laid out by Ponce-Ulloa regarding his attorney's actions fail to establish he performed below an objective standard of reasonableness. Ponce-Ulloa's counsel's actions fell well within "the 'wide range' of reasonable professional assistance." *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 688). And even if counsel's actions were deemed unreasonable, Ponce-Ulloa was not prejudiced because the outcome likely would have been the same based on the evidence and testimony presented at trial. For these reasons, the Court DENIES Ponce-Ulloa's ineffective assistance of counsel claim.

### V. CERTIFICATE OF APPEALABILITY

When a district court enters a final order denying a petition under § 2255, it must

either issue or deny a certificate of appealability ("COA"). By statute, a COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court has dismissed the petition or claim on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons set forth above, the Court concludes that Ponce-Ulloa has failed to make any showing, let alone a substantial showing, of the denial of a constitutional right. Accordingly, the Court will not issue a COA.

If Ponce-Ulloa wishes to proceed to the United States Court of Appeals for the Ninth Circuit, he must file a notice of appeal in this Court within thirty days after entry of this Order, and he must seek a COA from the United States Court of Appeals for the Ninth Circuit in accordance with Federal Rule of Appellate Procedure 22(b)(2). *Id*. ("In a habeas corpus proceeding in which the detention complained of arises from process issued by a state court, or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c) . . .").

## VI. CONCLUSION

For all the reasons stated above, the Court finds no reason to set aside Ponce-Ulloa's conviction or sentence. Furthermore, the Court finds it unnecessary to conduct an evidentiary hearing on the same. Thus, the motion is DENIED.

///

///

## VII. ORDER

**IT IS HEREBY ORDERED:**

1. Ponce-Ulloa's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Dkt.1); CR–150 (Dkt. 111) is **DENIED**. The Clerk of the Court is directed to file this Order in both the criminal and civil case.

2. The Court finds there is no need for an evidentiary hearing.

3. No certificate of appealability shall issue. Ponce-Ulloa is advised that he still may request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Ninth Circuit Rule 22-1. To do so, he must file a timely notice of appeal.

4. If Ponce-Ulloa files a timely notice of appeal, and not until such time, the Clerk of the Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals.

DATED: March 13, 2023

David C. Nye
Chief U.S. District Court Judge